## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**AARON HUBER et al.**                                    **CIVIL ACTION**

**VERSUS**                                                **NO. 20-2197**

**BIOSCRIP INFUSION SERVICES et al.**                     **SECTION: "G"(5)**

## ORDER AND REASONS

In this litigation, Plaintiffs Aaron Huber ("Huber") and Justin Theriot's ("Theriot") (collectively, "Plaintiffs") allege that BioScrip Infusion Services LLC and Option Health Care, Inc. (collectively, "Defendants") are liable to Plaintiffs for unpaid sales commissions.[1] Before the Court is Plaintiffs' "Motion for Class Certification."[2] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

On May 22, 2020, Plaintiffs filed a petition in the Civil District Court for the Parish of Orleans, State of Louisiana, against Defendants.[3] In the Petition, Plaintiffs allege that they were commissioned salespersons for Defendants during the third quarter of 2019.[4] Plaintiffs further allege that Defendants represented that they would pay Plaintiffs quarterly commissions calculated

---

[1] Rec. Doc. 1-1 at 10.

[2] Rec. Doc. 13

[3] Rec. Doc. 1-1.

[4] Id. at 10–11.

based on "hitting specific sales goals as outlined in the 2019 Sale Compensation Plan."[5] According to Plaintiffs, Defendants "failed to remit [Plaintiffs'] commissions that were earned as agreed in the third quarter of 2019 in the amounts outlined in the Sales Compensation Plan which covered that quarter."[6]

Plaintiffs allege claims for breach of contract, failure to pay employees after discharge, unlawful non-payment of commissions, unjust enrichment, unfair trade practices, and detrimental reliance against Defendants under Louisiana law.[7] Additionally, in the Petition, Plaintiffs state that they "seek to have this matter proceed as a Class Action . . . [of] all those similarly situated who did not receive commissions in the amount due under the commission structure they reasonably relied upon when they completed their sales."[8]

In the prayer for relief, Plaintiffs request a declaration "that the Defendants are liable for all unpaid commissions, unpaid wages, unfair trade practices, and unjust enrichment arising from the allegations outlined herein."[9] Plaintiffs also pray that "upon certification of the class action, this Court call for the formulation of a suitable management plan pursuant to Louisiana law."[10] In addition, Plaintiffs request "[t]hat the rights of the members of the class to establish their entitlement to compensatory damages, and the amount thereof, be reserved for determination in their individual actions when appropriate."[11]

---

[5] *Id.* at 11.

[6] *Id.*

[7] *Id.* at 14–15.

[8] *Id.* at 11–12.

[9] *Id.* at 15.

[10] *Id.*

[11] *Id.*

Defendants removed the instant action to this Court on August 5, 2020, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332.[12]

On November 5, 2020, Plaintiffs filed the instant motion for class certification.[13] Defendants filed an opposition to the motion for class certification on November 24, 2020.[14]

## II. Parties' Arguments

### A.    *Plaintiffs' Arguments in Support of the Motion for Class Certification*

In the instant motion, Plaintiffs seek certification of a class of "Commissioned salespersons employed by BioScrip Infusion Services, LLC and/or Option Care Health, Inc. during the third quarter of 2019 who did not receive all due commission, wherever located."[15] The proposed class representatives are Huber and Theriot.[16] Plaintiffs allege that Huber and Theriot are owed commissions from their work as salespersons for Defendants during the third quarter of 2019 and are "personally familiar" with Defendants' alleged failure to remit commissions to other salespersons during that period.[17]

### 1.    Plaintiffs contend that the class certification requirements under Rule 23(a) are satisfied

Plaintiffs argue that class certification is proper in this case pursuant to Federal Rule of Civil Procedure 23.[18] Plaintiffs aver that the Rule 23(a) requirements—numerosity, commonality,

---

[12] Rec. Doc. 1.

[13] Rec. Doc. 13.

[14] Rec. Doc. 14.

[15] Rec. Doc. 1-1 at 12.

[16] Rec. Doc. 13-1 at 2.

[17] *Id.* Plaintiffs also assert that Huber and Theriot "have been involved in fact development in this class action and assume their fiduciary duty to the class." *Id.*

[18] *Id.* at 1.

typicality, and adequacy of representation—are met.[19]

      *a.    Numerosity*

First, with respect to the numerosity requirement, Plaintiffs assert that although the "exact number and identities of the class plaintiffs are unknown at this time," Plaintiffs "are of the information and belief that the class of plaintiffs consists of, at a minimum, several hundred salespersons working for Defendants in Quarter 3 of 2019."[20]

      *b.    Commonality*

Plaintiffs next argue that the commonality requirement for class certification is satisfied because "[t]here are common questions of law and fact applicable to all class members which predominate over individual questions."[21] Specifically, Plaintiffs argue that there are three common questions among the proposed class members: (1) whether Defendants breached a contract with the proposed class members by failing to remit commissions as calculated using the Sales Compensation Plan; (2) whether the proposed class members reasonably and detrimentally relied on the Sales Compensation Plan when they completed their sales; and (3) whether Defendants engaged in unfair trade practices by failing to remit commissions in the amount the proposed class members relied on.[22]

      *c.    Typicality*

Third, Plaintiffs contend that the claims brought by Plaintiffs are typical of all proposed class members because "[t]he claims of both arise from the same set of facts and they both seek

---

[19] *Id.* at 1, 3.

[20] *Id.* at 4.

[21] *Id.*

[22] *Id.* at 4–5.

the same relief, specifically 2019 [Quarter 3] commissions calculated using the Sales Compensation Plan."[23]

### d.      Adequacy

Fourth, Plaintiffs argue that the representative parties fairly and adequately protect the interests of the proposed class because "the claims of the named plaintiffs are interrelated with the claims of the absent class members to such a degree that it is certain that the interests of the absent class members will be adequately and fairly protected."[24]

### 2.      Plaintiffs assert that the class certification requirements under Rule 23(b) are satisfied

Next, Plaintiffs argue that the requirements of Rules 23(b)(1)(A) and 23(b)(3) are also satisfied in this case. Specifically, Plaintiffs contend that Rule 23(b)(1)(A) is satisfied "because all salespersons working for Defendants in Quarter 3 of 2019 were operating under the belief they would be compensated according to the same Sales Compensation Plan."[25] Plaintiffs assert that "[p]rosecuting separate actions by individual class members would create risk of inconsistent or varying adjudication with respect to individual salespersons' entitlement to unpaid commissions."[26]

Additionally, Plaintiffs argue that Rule 23(b)(3) is satisfied because: (i) there are no individual questions which predominate over the common questions of law and fact in this matter; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of this case in light of the following factors:

---

[23] *Id.* at 5.

[24] *Id.* at 6.

[25] *Id.* at 7.

[26] *Id.*

a) the low interest of the members of the class individually controlling the prosecution of separate actions;

b) the lack of significant prior individual litigation by class members;

c) the desirability of concentrating this litigation in this forum;

d) the benefits and lack of difficulty in management of this matter as a class action;

e) the lack of practical ability of individual class members to purse their claims without the class action vehicle; and

f) the cost, efficiency and other benefits which would justify this matter proceeding as a class action.[27]

## B.   *Defendants' Arguments in Opposition to the Motion for Class Certification*

In opposition, Defendants initially point out the Plaintiffs have brought six separate claims under Louisiana law against Defendants.[28] Defendants note that if this case is certified, "it would implicate the laws of numerous other states in the United States."[29] Defendants then offer three principal arguments in opposition to Plaintiffs' motion for class certification:[30]

### 1.   Defendants argue that Plaintiffs' proposed class is deficient

First, Defendants argue that Plaintiffs' proposed class definition is deficient because the proposed class is not limited to any particular state law and is "inadequate, insufficiently defined, [and] overbroad."[31] Specifically, Defendants assert that Plaintiffs' proposed class of those "who did not receive all *due* commission" requires an individualized factual assessment which renders the proposed class improperly defined.[32]

---

[27] *Id.* at 8.

[28] Rec. Doc. 14 at 2.

[29] *Id.*

[30] *Id.*

[31] *Id.* at 4–5.

[32] *Id.* at 5.

### 2.    Defendants assert that Plaintiffs have failed to establish the Rule 23(a) requirements for class certification

Second, Defendants argue that Plaintiffs have failed to establish the Rule 23(a) prerequisites necessary to certify a class.[33]

#### a.    Numerosity

Defendants contend that Plaintiffs present no evidence in support of their conclusion that the numerosity requirement is satisfied in this case.[34] Defendants further contend that Plaintiffs have presented no evidence to show that joinder of all members is impracticable.[35]

#### b.    Commonality

Defendants argue that Plaintiffs set forth only conclusory statements regarding commonality and ignore certain "critical issues."[36] Specifically, Defendants aver that "whether Defendants breached a contract is going to be subject to analysis under numerous state laws."[37] According to Defendants, Plaintiffs have presented "no evidence to demonstrate that the 2019 Sales Incentive Plan is a contract at all or that it applies to all putative class members."[38] Defendants assert that "whether the class members reasonably and detrimentally relied on the Sales Compensation Plan" will likewise require an individualized analysis under each applicable state law.[39]

---

[33] *Id.* at 5–12.

[34] *Id.* at 6.

[35] *Id.* at 7.

[36] *Id.* at 8.

[37] *Id.* at 8–9 (internal quotation marks omitted).

[38] *Id.* at 9.

[39] *Id.* (internal quotation marks omitted).

In addition, Defendants contend that unfair trade practice claims cannot be brought in Louisiana in a representative capacity, and any alleged commonality premised on this claim is invalid.[40] Defendants note that Huber does not assert a wage payment claim while Theriot does.[41] Finally, Defendants submit that pursuant to Louisiana Code of Civil Procedure article 2298, unjust enrichment claims are not cognizable where there are alternate remedies available, and that because Plaintiffs allege five other causes of action, the unjust enrichment claim cannot form the basis for commonality.[42]

      c.     *Typicality*

Similarly, Defendants argue that Plaintiffs' allegations of typicality are too conclusory and unsupported to show that the Rule 23(a) typicality requirement is satisfied.[43] Defendants note that the claims of all putative class members who reside outside of Louisiana would be governed by different states' laws, and "any claims Plaintiffs may have cannot be typical of the purported class of individuals whose claims are subject to other state laws."[44]

      d.     *Adequacy*

Defendants contend that Plaintiffs cannot adequately represent a class of employees who worked outside of Louisiana.[45] Defendants assert that Plaintiffs have submitted "no evidence or support for their adequacy as class representatives" and "do not submit any declaration or other

---

[40] *Id.*

[41] *Id.* at 10.

[42] *Id.*

[43] *Id.* at 10–11.

[44] *Id.* at 11.

[45] *Id.* at 11–12.

evidence reflecting that they are willing and able to take an active role in the litigation."[46]

### 3.   Defendants argue that Plaintiffs have failed to establish the Rule 23(b) requirements for class certification

Third, Defendants argue that Plaintiffs have failed to establish the Rule 23(b) requirements necessary to certify a class.[47] Defendants contend that separate actions would not result in incompatible standard of conduct for Defendants.[48] Specifically, Defendants assert that it "would not be incompatible for Defendants to pay commissions to one plaintiff while not paying another because each individual plaintiff will have to demonstrate that they . . . were entitled to some payment that they did not receive."[49] Additionally, Defendants point out that since various state laws apply to different proposed class members, varying judgments with respect to Plaintiffs' claims would not be incompatible.[50]

Additionally, Defendants argue that individualized issues necessary to adjudicate Plaintiffs' claims predominate over the common issues arising in this lawsuit.[51] Defendants reiterate that in this case, variations in state law bear on the issues on this case.[52] Defendants also argue that class treatment may not be suitable because the calculation of damages is not susceptible to mathematical or formulaic calculation.[53] Furthermore, Defendants argue that Plaintiffs have not

---

[46] *Id.* at 12.

[47] *Id.* at 13–19.

[48] *Id.* at 14.

[49] *Id.*

[50] *Id.*

[51] *Id.* at 15.

[52] *Id.* at 16.

[53] *Id.* at 17.

demonstrated how the "inherent factual and legal differences among the putative plaintiffs' claims are somehow immaterial."[54]

In conclusion, Defendants argue that a class action is not the superior method to adjudicate the proposed class and that Plaintiffs make "no argument in support of superiority."[55]

### III. Legal Standard

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure.[56] Plaintiffs need not first establish the merits of their case in order to gain certification.[57] Instead, in order to be certified, a proposed class must first meet the initial requirements established by Federal Rule of Civil Procedure 23(a): (1) numerosity of parties; (2) commonality of legal and factual issues; (3) typicality of the claims and defenses of the class representatives; and (4) adequacy of the representation by the class representatives.[58]

However, satisfaction of these four requirements, alone, is not enough to merit class certification. Additionally, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b),"[59] which sets forth the types of actions that may be maintained as a class action. Here, Plaintiffs seek certification under Rule 23(b)(1)(A) or Rule 23(b)(3).

Rule 23(b)(1)(A) provides for class certification where "prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with

---

[54] *Id.* at 18.

[55] *Id.*

[56] Fed. R. Civ. P. 23.

[57] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (citing *Miller v. Mackey Int'l*, 452 F.2d 424, 427 (5th Cir. 1971)).

[58] Fed. R. Civ. P. 23(a); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011).

[59] *Id.* at 2548.

respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." As the Supreme Court has recognized, Rule 23(b)(1)(A) "takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)."[60]

When plaintiffs seek certification pursuant to Rule 23(b)(3), "the court [must] find[ ] that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[61]

Rule 23(b)(3) contains a list of "matters pertinent" to the findings of predominance and superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.[62]

---

[60] *Products Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (internal citations omitted).

[61] Fed. R. Civ. P. 23(b)(3) (emphasis added).

[62] *Id.*

"In order to 'predominate,' common issues must constitute a significant part of the individual cases."[63] Additionally, the Fifth Circuit has explained that courts must determine the manner in which the class action would be tried in order to determine whether common legal issues predominate over individual issues and whether manageability problems preclude class litigation from being superior to other available methods of adjudicating the controversy.[64] "The predominance and superiority requirements are 'far more demanding' than is [R]ule 23(a)(2)'s commonality requirement,"[65] and a court must "identify[ ] the substantive issues that will control the outcome, assess[ ] which issues will predominate, and then determin[e] whether the issues are common to the class."[66] Predominance requires that central questions be "capable of class-wide determination," utilizing class-wide rather than individualized evidence.[67] Such an inquiry is necessary to prevent the class from "degenerating into a series of individual trials."[68]

As the parties seeking certification, the burden to show that all of the requirements for class certification have been met rests on the plaintiffs.[69] Then, the decision of whether to certify a class lies soundly within the district court's discretion; however, the Court "must conduct a

---

[63] *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

[64] *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740, 743-45 (5th Cir. 1996).

[65] *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003) (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 624 (1997)).

[66] *Id.*

[67] *Benavides v. Chicago Title Ins. Co.*, 636 F.3d 699, 702 (5th Cir. 2011).

[68] *O'Sullivan*, 319 F.3d at 738; *see also State of Ala. v. Blue Bird Body Co.*, 573 F.2d 309, 328 (5th Cir. 1978) ("[I]f the effect of class certification . . . will in actuality require a multitude of mini-trials . . . , then the justification for class certification is absent.").

[69] *See Unger v. Amedisys, Inc.*, 401 F.3d 316, 320 (5th Cir. 2005).

rigorous analysis of the [R]ule 23 prerequisites before certifying a class."[70] Further, "Rule 23 requires the Court to find, not merely assume, the facts favoring class certification."[71]

## IV. Analysis

Plaintiffs seek to certify a class of: "Commissioned salespersons employed by BioScrip Infusion Services, LLC and/or Option Care Health, Inc. during the third quarter of 2019 who did not receive all due commission, wherever located."[72] Plaintiffs request certification under Federal Rules of Civil Procedure 23(b)(1)(A) and 23(b)(3).[73] Defendants counter that certification should be denied because the proposed class is deficient and Plaintiffs have not met their burden of showing that the Rule 23(a) or Rule 23(b) requirements are satisfied.[74]

**A.      Whether Plaintiffs have met their burden of showing that the Rule 23(a) prerequisites are satisfied**

In order to be certified, a proposed class must first meet the requirements of Federal Rule of Civil Procedure 23(a): (1) numerosity of parties; (2) commonality of legal and factual issues; (3) typicality of the claims and defenses of the class representatives; and (4) adequacy of the representation by the class representatives.[75]  "[T]he party seeking certification bears the burden of establishing that *all* requirements of rule 23(a) have been satisfied."[76]

---

[70] *Castano*, 84 F.3d at 740.

[71] *Unger*, 401 F.3d at 321 (citing Fed. R. Civ. P. 23(b)(3)).

[72] Rec. Doc. 1-1 at 12.

[73] Rec. Doc. 13.

[74] Rec. Doc. 14.

[75] Fed. R. Civ. P. 23(a); *see also Dukes*, 131 S. Ct. at 2550.

[76] *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 481 (5th Cir. 2001).

### 1.      Numerosity

Plaintiffs assert that although the "exact number and identities of the class plaintiffs are unknown at this time," Plaintiffs "are of the information and belief that the class of plaintiffs consists of, at a minimum, several hundred salespersons working for Defendants in Quarter 3 of 2019."[77] In opposition, Defendants contend that Plaintiffs present no evidence in support of their conclusion that the numerosity requirement is satisfied in this case.[78]

Plaintiffs offer nothing more than a perfunctory nod to the numerosity requirement. In addition, Fifth Circuit precedent dictates that the "proper focus" under Rule 23(a)(1) is "not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors."[79] Here, Plaintiffs have set forth no evidence or specific allegations that joinder would be impracticable.[80]

### 2.      Commonality

Plaintiffs argue that the commonality requirement is satisfied because "[t]here are common questions of law and fact applicable to all class members which predominate over individual questions."[81] In opposition, Defendants argue that Plaintiffs set forth only conclusory statements regarding commonality and ignore certain "critical issues."[82]

Although Plaintiffs set forth conclusory allegations with respect to commonality, "[t]he

---

[77] Rec. Doc. 13-1 at 4.

[78] Rec. Doc. 14 at 6.

[79] *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (internal citation omitted).

[80] *See* Rec. Doc. 13-1 at 3–4.

[81] *Id.* at 4.

[82] Rec. Doc. 14 at 8.

test for commonality is not demanding and is met where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members."[83] Plaintiffs argue that there are three common questions among the proposed class members: (1) whether Defendants breached a contract with the proposed class members by failing to remit commissions as calculated using the Sales Compensation Plan; (2) whether the proposed class members reasonably and detrimentally relied on the Sales Compensation Plan when they completed their sales; and (3) whether Defendants engaged in unfair trade practices by failing to remit commissions in the amount the proposed class members relied on.[84]

Plaintiff asserts an unfair trade practices claim under the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUPTA"), Louisiana Revised Statute 51:1401 *et seq*.[85] Under Louisiana law, unfair trade practices claims under LUPTA cannot be brought in a representative capacity.[86] However, the Court finds that the remaining two common questions asserted by Plaintiffs satisfy the "not demanding" standard for commonality.

3.      **Typicality**

Plaintiffs contend that the claims brought by Huber and Theriot are typical of all proposed class members because "[t]he claims of both arise from the same set of facts and they both seek the same relief, specifically 2019 [Quarter 3] commissions calculated using the Sales

---

[83] *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (internal citation omitted).

[84] Rec. Doc. 13-1 at 4–5.

[85] Rec. Doc. 1-1 at 15.

[86] *See Indest-Guidry, Ltd. v. Key Off. Equip., Inc.*, 2008-599 (La. App. 3 Cir. 11/5/08), 997 So. 2d 796, 810, *writ denied*, 2008-2851 (La. 2/6/09), 999 So. 2d 782 ("Th[e] language in La.R.S. 51:1409(A) refers to 'the clear ban against class actions by private persons' under the Act.") (*citing State ex rel. Guste v. General Motors Corp.*, 370 So.2d 477, 483 (La. 1978) (Dennis, J. concurring)).

Compensation Plan."[87] In opposition, Defendants note that the claims of all putative class members who reside outside of Louisiana would be governed by different states' laws, and "any claims Plaintiffs may have cannot be typical of the purported class of individuals whose claims are subject to other state laws."[88]

"The test for typicality, like the test for commonality, is not demanding."[89] Typicality "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent."[90] Although Plaintiffs' argument with respect to typicality is lamentably conclusory and speculative, the Court finds that Plaintiffs satisfy the low standard for typicality by alleging generally that the claims brought by Huber and Theriot arise from the same factual circumstances and advance the same theories of relief as the proposed class members.

### 4.    Adequacy

Plaintiffs argue that Huber and Theriot fairly and adequately protect the interests of the proposed class because "the claims of the named plaintiffs are interrelated with the claims of the absent class members to such a degree that it is certain that the interests of the absent class members will be adequately and fairly protected."[91] In opposition, Defendants assert that Plaintiffs have submitted "no evidence or support for their adequacy as class representatives," and "do not submit any declaration or other evidence reflecting that they are willing and able to

---

[87] Rec. Doc. 13-1 at 5.

[88] Rec. Doc. 14 at 11.

[89] *Lightbourn v. Cty. of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997).

[90] *Mullens*, 186 F.3d at 625.

[91] Rec. Doc. 13-1 at 6.

take an active role in the litigation."[92]

Plaintiffs fail to show how Huber and Theriot are adequate representatives of the proposed class. Plaintiffs submit that "the claims of the named plaintiffs are interrelated with the claims of the absent class members to such a degree that it is certain that the interests of the absent class members will be adequately and fairly protected."[93] "Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two."[94] Here, Plaintiffs' sweeping statement that Huber and Theriot's claims are "interrelated" with the claims of the proposed class members does not suffice to meet Plaintiffs' burden of establishing that the adequacy of representation requirement is satisfied.

Accordingly, the Court finds that Plaintiffs have not established that all four Rule 23(a) prerequisites for class certification ae met. Nevertheless, in the interest of completeness, the Court also evaluates whether Plaintiffs have shown that class certification is warranted under either Rule 23(b)(1)(A) or Rule 23(b)(3).

**B.**     ***Whether Plaintiffs have met their burden of showing that the Rule 23(b)(1)(A) requirements are satisfied***

Plaintiffs seek certification under Rule 23(b)(1)(A).[95] Rule 23(b)(1)(A) provides for class certification where "prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Rule

---

[92] Rec. Doc. 14 at 12.

[93] Rec. Doc. 13-1 at 6.

[94] *Id.* at 479.

[95] Rec. Doc. 13-1 at 3.

23(b)(1)(A) "takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)."[96]

Here, Plaintiffs contend that the requirements of Rule 23(b)(1)(A) are satisfied "because all salespersons working for Defendants in Quarter 3 of 2019 were operating under the belief they would be compensated according to the same Sales Compensation Plan."[97] Plaintiffs argue that prosecuting each proposed class member's case separately would create a risk of inconsistent adjudication with respect to individual salespersons' entitlement to unpaid commissions, which would establish incompatible standards of conduct for Defendants.[98] In opposition, Defendants argue that separate actions would not result in incompatible standards of conduct for Defendants because "it would not be incompatible for Defendants to pay commissions to one plaintiff while not paying another because each individual plaintiff will have to demonstrate that they qualified for a commission . . . .[99]

The Court finds that Plaintiffs have not met their burden of showing that the Rule 23(b)(1)(A) requirements are satisfied in this case. "Rule 23(b)(1)(A) focuses on class action suitability from the defendant's perspective."[100] Additionally, the Fifth Circuit has held that certification under Rule 23(b)(1)(A) is "seldom appropriate when dealing with monetary

---

[96] *Products Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (internal citations omitted).

[97] Rec. Doc. 13-1 at 7.

[98] *Id.*

[99] Rec. Doc. 14 at 14.

[100] *Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n*, 624 F.3d 185, 196 (5th Cir. 2010).

compensation because no inconsistency is created when courts award varying levels of money damages to different plaintiffs."[101] Here, Plaintiffs ultimately seek monetary compensation under the sales plan, and the amount of damages awarded to each individual salesperson would vary depending on the commissions each individual is owed and ultimately received.[102]

Moreover, the Fifth Circuit has found that "[u]nder Rule 23(b)(1)(A), dissimilar outcomes that result from differing state laws are insufficient to justify class certification."[103] Plaintiffs seek a proposed class of commissioned salespersons "wherever located" and assert—albeit without offering any evidence in support—that "Defendants employed at least hundreds of salespersons nationally."[104] Multistate class actions involving state-law claims may require multiple state laws to be applied, meaning that questions of law may not be common to the entire class.[105] Accordingly, dissimilar outcomes resulting from differing state laws are likely to result and certification is inappropriate under Rule 23(b)(1)(A).

**C.**    ***Whether Plaintiffs have met their burden of showing that the Rule 23(b)(3) requirements are satisfied***

Plaintiffs also seek certification under Rule 23(b)(3).[106] When plaintiffs seek certification pursuant to Rule 23(b)(3), "the court [must] find[ ] that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a

---

[101] *Id.* at 197.

[102] Rec. Doc. 1-1 at 15.

[103] *Casa Orlando*, 624 F.3d at 198.

[104] Rec. Doc. 1-1 at 12; Rec. Doc. 13-1 at 4.

[105] *Casa Orlando*, 624 F.3d at 194 ("In a multi-state class action, variations in state law may swamp any common issues and defeat predominance."); *see also* 7AA Fed. Prac. & Proc. Civ. § 1780.1 (3d ed.).

[106] Rec. Doc. 13-1 at 3.

class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[107]

Here, the Court finds that Plaintiffs fail to show that the predominance and superiority factors of Rule 23(b) are satisfied. "The predominance and superiority requirements are 'far more demanding' than is [R]ule 23(a)(2)'s commonality requirement."[108]

### 1.    Predominance

With respect to predominance, Plaintiffs argue that no individual questions predominate over the common questions of law and fact in this matter.[109] According to Plaintiffs, "[w]hether the Sales Compensation Plan created an obligation for Defendants to pay commissions to salespersons in Quarter 3 of 2019 and whether Defendants paid those commissions are questions that predominate over any alleged individual duty or damages questions."[110] In opposition, Defendants argue that Plaintiffs' assertion ignores variations in state law and that common issues do not predominate over individualized issues.[111] Defendants also argue that "class treatment may not be suitable where, as here, the calculation of damages is not susceptible to a mathematical or formulaic calculation."[112]

Here, the Court finds that Plaintiffs' class allegations fail to meet Rule 23(b)(3)'s predominance requirement. As an initial matter, the Court notes that, in large part, Plaintiffs

---

[107] Fed. R. Civ. P. 23(b)(3) (emphasis added).

[108] *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003) (quoting *Amchem Prods. v. Windsor,* 521 U.S. 591, 624 (1997)).

[109] Rec. Doc. 13-1 at 8.

[110] *Id.* at 7–8.

[111] Rec. Doc. 14 at 16–18.

[112] *Id.* at 17.

merely recite the requirements for class certification without providing any evidence or reasoning to support their assertion that the requirements are met. Determining whether or not legal issues common to the class predominate over individual issues requires this Court to identify the substantive issues that will control the outcome, assess which issues will predominate, and determine whether the issues are common to the class.[113] "Such an understanding prevents the class from degenerating into a series of individual trials."[114] This task becomes challenging when, as here, the party seeking certification provides minimal information and evidence to the Court.

Plaintiffs' asserted "common question" of "whether the Sales Compensation Plan created an obligation for Defendants to pay commissions to salespersons in Quarter 3 of 2019" hinges on the existence of an agreement between proposed class members and Defendants.[115] To determine whether such an agreement exists, the Court will need to examine the contractual relationship between Defendants and each individual proposed class member. In addition, Defendants may be able to raise individualized defenses regarding the existence and extent of any contractual obligation that may differ with respect to each proposed class member.[116] This is precisely the type of individualized adjudication that frustrates the economy and efficiency of class action treatment.[117]

---

[113] O'Sullivan, 319 F.3d at 738 (citing Castano, 84 F.3d at 744).

[114] Id.

[115] See id.

[116] See, e.g. Basco v. Wal-Mart Stores, Inc., 216 F. Supp. 2d 592, 602 (E.D. La. 2002) (Duval, J.) (finding that individual issues would predominate the plaintiffs' breach of contract claims because "the damages suffered by each defendant will vary . . . [and] defendants will be entitled to raise defenses to each alleged 'contract' that may differ with each plaintiff.").

[117] 7AA Fed. Prac. & Proc. Civ. § 1778 (3d ed.) ("[W]hen individual rather than common issues predominate, the economy and efficiency of class-action treatment are lost and the need for judicial supervision and the risk of confusion are magnified.").

Moreover, as discussed above, Plaintiffs seek a proposed class of commissioned salespersons "wherever located," resulting in a possible multistate class action necessitating the application of multiple state laws.[118] "In order to make the findings required to certify a class action under Rule 23(b)(3) (that common issues predominate, etc.), one must initially identify the substantive law issues which will control the outcome of the litigation."[119] Here, Plaintiffs bring six separate state law claims, including claims for breach of contract, unjust enrichment, and unfair trade practices.[120] Without additional information, the Court is unable to determine whether variations in state law would render class treatment improper because Plaintiffs do not allege which states' laws would be implicated in this action.

Furthermore, assuming the existence of a contract between each proposed class member and Defendants, the damages suffered by each class member will vary.[121] To state a plausible breach of contract claim under Louisiana law, a plaintiff must allege that (1) a contract existed between the parties; (2) defendant breached that contract; and (3) plaintiff suffered damages as a result.[122] Confusingly, in the Petition, Plaintiffs pray "[t]hat the rights of the members of the class to establish their entitlement to compensatory damages, and the amount thereof, be reserved for determination in their individual actions when appropriate."[123] However,

---

[118] Rec. Doc. 1-1 at 12; Rec. Doc. 13-1 at 4; *see also Casa Orlando*, 624 F.3d at 194 ("In a multi-state class action, variations in state law may swamp any common issues and defeat predominance."); 7AA Fed. Prac. & Proc. Civ. § 1780.1 (3d ed.).

[119] *State of Ala. v. Blue Bird Body Co.*, 573 F.2d 309, 316 (5th Cir. 1978).

[120] Rec. Doc. 1-1 at 14–15.

[121] *Id.*

[122] *Denham Homes, L.L.C. v. Teche Fed. Bank*, 2014-1576 (La. App. 1 Cir. 9/18/15), 182 So. 3d 108, 119.

[123] Rec. Doc. 1-1 at 15.

Plaintiffs also seek certification for the purpose of determining the "common issues of liability for compensatory damages."[124] The Court will, at a minimum, need to determine whether each proposed class member suffered damages as a result of a breach of contract—a task that will require examining the amount of commissions earned by each salesperson and the amount of commissions received by each salesperson.

In *Castano,* the Fifth Circuit observed that in cases involving several individualized issues, an action conducted nominally as a "class action" would "degenerate in practice to multiple lawsuits separately tried."[125] In this case, the Court finds that Plaintiff has failed to meet its burden of showing that common questions of law or fact predominate over any questions affecting only individual members as required by Rule 23(b)(3).

### 2. Superiority

Turning to the superiority requirement of Rule 23(b)(3), Plaintiffs argue that "[a] class action is 'superior' to other available methods for the fair and efficient adjudication of this case in light of: a) the low interest of the members of the class individually controlling the prosecution of separate actions, b) the lack of significant prior individual litigation by class members, c) the desirability of concentrating this litigation in this forum; d) the benefits and lack of difficulty in management of this matter as a class action; e) the lack of practical ability of individual class members to purse their claims without the class action vehicle, and f) the cost, efficiency and other benefits which would justify this matter proceeding as a class action."[126] In opposition,

---

[124] *Id.*

[125] 84 F.3d at 745 n. 19 (internal citations omitted) (discussing the relationship between predominance and superiority in mass torts).

[126] Rec. Doc. 13-1 at 8.

Defendants state that a class action is not the superior method to adjudicate the individual claims of the proposed class members.[127]

Class certification is permitted only if "the court finds . . . that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[128] Here, Plaintiff offers nothing more than a threadbare recitation of the factors set forth in Rule 23(b)(3) to show that a class action is a superior method to adjudicate this controversy. Therefore, the Court finds that Plaintiffs have not met their burden with respect to either of the requirements set forth in Rule 23(b)(3).

## V. Conclusion

Considering the foregoing reasons,

**IT IS HEREBY ORDERED** that  Plaintiffs Aaron Huber and Justin Theriot's "Motion for Class Certification"[129] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this __8th__ day of April, 2021.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[127] Rec. Doc. 14 at 18.

[128] *Ibe v. Jones*, 836 F.3d 516, 529 (5th Cir. 2016).

[129] Rec. Doc. 13

24